## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES PARSHALL, | ) |
| Plaintiff, | ) ) ) Case No._____ |
| v. | ) ) ) |
| EXTENDED STAY AMERICA, INC., ESH HOSPITALITY, INC., BRUCE N. HAASE, DOUGLAS G. GEOGA, ELLEN KESZLER, JODIE W. MCLEAN, KAPILA K. ANAND, RICHARD F. WALLMAN, THOMAS F. O'TOOLE, LISA PALMER, NEIL T. BROWN, STEVEN E. KENT, and SIMON M. TURNER, | ) ) ) ) ) ) ) ) ) ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff James Parshall ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action Extended Stay America, Inc. ("ESA"), its wholly owned and controlled paired-share real estate investment trust ("REIT") subsidiary, ESH Hospitality, Inc. ("ESH REIT" and together with ESA, the "Company" or the "Paired Entities"), and the members of ESA's and ESH REIT's Boards of Directors (the "Boards" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which the Company will be acquired by Eagle Parent Holdings L.P. ("Parent"), a joint venture of affiliates of Blackstone Real Estate Partners IX L.P. ("Blackstone Sponsor") and Starwood

Distressed Opportunity Fund XII Global, L.P. ("Starwood Sponsor," and together with Blackstone Sponsor, the "Sponsors") (the "Proposed Transaction").[1]

2. On March 15, 2021, the Company issued a press release announcing that it had entered into an Agreement and Plan of Merger dated March 14, 2021 (the "Merger Agreement") to sell the Company to the Sponsors. Under the terms of the Merger Agreement, Company shareholders will receive $19.50 in cash for each paired share[2] they own (the "Merger Consideration").[3]

3. On April 26, 2021, the Company filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (a) the financial projections for the Paired Entities and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Goldman Sachs & Co. LLC ("Goldman"); and (b) Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

---

[1] Non-party Blackstone Sponsor is an affiliate of The Blackstone Group Inc. ("Blackstone"), a global leader in real estate investing. Blackstone's principal executive offices are located at 345 Park Avenue, New York, New York 10154. Blackstone's real estate business was founded in 1991 and has $187 billion of investor capital under management. Blackstone is one of the largest property owners in the world, owning and operating assets across every major geography and sector, including logistics, multifamily and single-family housing, office, hospitality and retail. Its funds seek to acquire undermanaged, well-located assets across the world. Non-party Starwood Sponsor is an affiliate of Starwood Capital Group ("Starwood"). Starwood's principal executive offices are located at 591 West Putnam Avenue, Greenwich, Connecticut 06830. Starwood is a private investment firm with a core focus on global real estate, energy infrastructure and oil & gas. Non-party Parent is a Delaware limited partnership that is jointly owned by affiliates of the Sponsors.

[2] A "paired share" is one share of common stock of the ESA together with one share of class B common stock of ESH REIT, that are paired and trade together as a single unit on the Nasdaq Global Select Market. *See* Proxy Statement (defined below) at 1.

[3] The Proposed Transaction is valued at approximately $6 billion.

4.  Without additional information, the Proxy Statement is materially misleading in violation of the federal securities laws. Thus, it is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.  This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District

## THE PARTIES

9.  Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of the Company.

10. Defendant ESA is a Delaware corporation with its principal executive offices located at 11525 N. Community House Road, Suite 100, Charlotte, North Carolina 28277. ESA's brand

Extended Stay America is the leading brand in the mid-priced extended stay segment in the U.S. with 650 hotels.

11. Defendant ESH REIT is a Delaware corporation with its principal executive offices located at 11525 N. Community House Road, Suite 100, Charlotte, North Carolina 28277. ESH REIT is ESA's controlled subsidiary. ESA owns approximately 100% of ESH REIT's outstanding class A common stock and holders of paired shares own approximately 42% of ESH REIT's class B common stock. The Paired Entities' common stock trades on the Nasdaq Global Select Market under the ticker symbol "STAY."

12. Defendant Bruce N. Haase ("Haase") has been Chief Executive Officer ("CEO"), President, and a director of ESA since November 2019, CEO and President of ESH REIT since November 2019, and a director of ESH REIT since April 2018.

13. Defendant Douglas G. Geoga ("Geoga") has served as Chair of the ESA board since July 2013, and as Chair of the ESH REIT board since November 2013.

14. Defendant Ellen Keszler ("Keszler") has been a director of ESA since February 2018.

15. Defendant Jodie W. McLean ("McLean") has been a director of ESA since June 2017.

16. Defendant Kapila K. Anand ("Anand") has been a director of ESA since July 2016 and a director of ESH REIT since May 2017.

17. Defendant Richard F. Wallman ("Wallman") has been a director of ESA since July 2013 and previously served as a director of ESH REIT from November 2013 to May 2016.

18. Defendant Thomas F. O'Toole ("O'Toole") has been a director of ESA since May 2017.

19. Defendant Lisa Palmer ("Palmer") has been a director of ESH REIT since August 2014.

20. Defendant Neil T. Brown ("Brown") has been a director of ESH REIT since May 2017.

21. Defendant Steven E. Kent ("Kent") has been a director of ESH REIT since May 2017.

22. Defendant Simon M. Turner ("Turner") has been a director of ESH REIT since March 2020.

23. Defendants identified in paragraphs 10-22 are referred to herein as the "Boards" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Proposed Transaction**

24. On March 15, 2021, the Company issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> CHARLOTTE, N.C., March 15, 2021 -- Extended Stay America, Inc. ("ESA") and its paired-share REIT, ESH Hospitality, Inc. ("ESH" and together with ESA, the "Company") (NASDAQ: STAY) announced today that it has signed a definitive agreement to be acquired by a 50/50 joint venture between funds managed by Blackstone Real Estate Partners ("Blackstone") and Starwood Capital Group ("Starwood Capital") for $19.50 per paired share in an all-cash transaction valued at approximately $6 billion.
>
> The $19.50 per paired share consideration represents a premium of 23.3% over the 30-day volume-weighted average share price ending March 12, 2021 and a premium of 15.1% over the closing stock price on March 12, 2021.
>
> Doug Geoga, Chairman of the Boards of the Company said, "After a thorough review of the Company's business plan, the Boards concluded that the immediate cash premium offered by this transaction is compelling for stockholders. We are delighted with this outcome."
>
> Bruce Haase, CEO and President of the Company said, "We are pleased to announce this transaction with Blackstone and Starwood Capital, two of the most experienced investors in the hospitality space with impressive track records of building value in a wide variety of real estate assets, and we look forward to this partnership and continued growth." He added, "The Boards and senior management are especially grateful to the excellent team of leaders and associates who have made this company such a leader in the lodging industry and we are confident in the Company's continued success under private ownership."

Tyler Henritze, head of US acquisitions for Blackstone Real Estate commented, "Travel and leisure is one of Blackstone's highest conviction investment themes, and we have confidence in the extended stay model. We helped create this company nearly twenty years ago, and believe our expertise puts us in a unique position to add long-term value."

Barry Sternlicht, CEO of Starwood Capital, added, "Extended Stay has demonstrated resilience over the past year despite persistent challenges due to government lockdowns and travel restrictions. We are excited about the Company's growth opportunity as restrictions ease and we're confident that, in partnership with Blackstone and the Company, our team has the right experience to drive continued success."

The transaction has been unanimously approved by ESA's Board of Directors and has also been approved by ESH's Board of Directors. Completion of the transaction, which is expected to occur in the second quarter of 2021, is contingent upon customary closing conditions, including approval of the Company's stockholders. The transaction is not contingent on receipt of financing. In connection with the transaction, an affiliate of Starwood Capital, which owns approximately 9.4% of Company's outstanding paired shares, has entered into a support agreement whereby it has agreed to vote its shares in favor of the transaction.

The Company does not expect to pay its regular quarterly distribution during the pendency of the transaction except for the previously declared $0.09 distribution on March 26, 2021. However, under the terms of the merger agreement, the acquiror may request that ESA pay a special distribution immediately prior to the closing of up to $1.75 per paired share, in which case the cash consideration paid in the merger will be reduced by the amount of the distribution.

**The Proxy Statement Contains Material Misstatements or Omissions**

25.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to the Company's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

26.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the financial projections for the Paired Entities and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Goldman; and (b) Company insiders' potential conflicts of interest.

*Material Omissions Concerning the Company's Financial Projections and Goldman's Financial Analyses*

27. The Proxy Statement fails to disclose material information concerning the financial projections for the Paired Entities.

28. For example, the Proxy Statement sets forth that:

> At the February 5, 2021 [Board] meetings, representatives of Goldman Sachs reviewed and discussed with the Boards management's preliminary projections for the Paired Entities for 2021 through 2025 reflecting management's plan for the Paired Entities. Representatives of Goldman Sachs then reviewed and discussed with the Board certain preliminary financial analyses prepared by Goldman Sachs based on management's projections, which were provided to Goldman Sachs for such purpose, reviewed the impact of potential revenue initiatives and potential asset sales by the Paired Entities, and reviewed general economic and industry developments and a range of strategic alternatives, including executing the Paired Entities' business plan, executing the Paired Entities' business plan with asset sales, pursuing alternatives for expanding the Paired Entities' footprint, a split of the Paired Entities into independent management and property companies, and a sale of the Paired Entities as a whole.

Proxy Statement at 52. The Proxy Statement, however, fails to disclose management's preliminary projections for years 2021 through 2025 for the Paired Entities discussed at the February 5, 2021 Board meetings.

29. The Proxy Statement also omits material information concerning Goldman's financial analyses.

30. The Proxy Statement describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, the Company's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

31. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (a) the terminal year estimate of free cash flow to be generated by the

7

Paired Entities; (b) quantification of the terminal values for the Paired Entities; (c) the net debt figure used in the analysis; and (d) quantification of the inputs and assumptions underlying the discount rate range of 7.00% to 8.00%.

32. With respect to Goldman's *Premia Analysis*, the Proxy Statement fails to disclose the transactions observed and the individual premiums thereof.

33. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

34. The omission of this information renders the statements in the "Background of the Mergers," "Forward-Looking Financial Information" and "Opinion of the Paired Entities' Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

35. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

36. The Proxy Statement sets forth that, "[a]s of the date of this joint proxy statement, none of our executive officers has entered into any agreement with Parent or any of its affiliates regarding employment with, or the right to purchase or participate in the equity of, Parent or any of its affiliates." *Id*. at 75. The Proxy Statement fails, however, to disclose whether any of the Sponsors' proposals or indications of interest mentioned management retention or participation in the combined company and the terms thereof.

37. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Company stockholders to understand potential conflicts of interest of

management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38. The omission of this material information renders the statements in the "Background of the Mergers" and "Interests of the Company's and Hospitality's Directors and Executive Officers in the Mergers" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

39. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

40. Plaintiff repeats all previous allegations as if set forth in full.

41. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

42. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the

financial analyses performed by the Company's financial advisor and potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

44. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

45. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

46. Plaintiff repeats all previous allegations as if set forth in full.

47. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, the Company's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Grubhub, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert

with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 24, 2021          **LONG LAW, LLC**

                 By */s/ Brian D. Long*
                   Brian D. Long (#4347)
                   3828 Kennett Pike, Suite 208
                   Wilmington, DE 19807
                   Telephone: (302) 729-9100
                   Email: BDLong@longlawde.com

                   *Attorneys for Plaintiff*